In the Matter of the Application of LILLIAN CHASON, Formerly Known as LILLIAN GILBERG, to Set Aside an Ex Parte Order Discharging Her as Committee of the Estate and Person of NATHAN GILBERG, an Incompetent.

Supreme Court, Special Term, Westchester County, February 23, 1937.

*David Rubin*, for the petitioner.

*Joseph E. Muson [D. William Leider* and *Kenneth Diamond,* of counsel], for the respondent.

*Elliot Cohen*, for the incompetent.

*Henry Zimmerman*, for the executors of the Silberhorn estate.

SYME, J. This is a motion by the committee of the person and estate of an incompetent to vacate and set aside an *ex parte* order made in June, 1934, discharging the committee.

Owing to the fact that the learned justice who made such *ex parte* order is now sitting in the Appellate Division, the motion cannot be referred to him, as otherwise it would be.

There is no question but that the primary, if not the sole, purpose of this application is to vitiate one of those deficiency judgments

in foreclosure, which have recently been frequently criticized by the courts as unconscionable.

In this instance the deficiency judgment amounts to $8,500 upon a mortgage of $7,999.80, thus permitting the mortgagee to acquire title to the property and to procure, in addition, a deficiency judgment in excess of the face of the original mortgage.

The most casual perusal of this record compels the conclusion that this is an instance in which the strong arm of equity must be invoked to spread its mantle of protection about this unfortunate incompetent, who is now confined in a lunatic asylum, to save him from this most astounding deficiency judgment, which, if permitted to stand, will wipe out what little estate remains to the incompetent.

A chronological statement of the facts will best demonstrate the injustice which has been perpetrated against this individual.

In June, 1919, the now incompetent was committed to the Hudson River State Hospital, where he remained until July, 1919. He again entered the same institution in September, 1925, and remained an inmate until July, 1930, when he was paroled to the custody of his son, and was discharged from parole in June, 1933. At that time his condition was: " Improved. Diagnosis, Dementia Praecox. Catatonic."

In June, 1928, during his second confinement in this institution, he was duly adjudicated incompetent, and his daughter, then Lillian Gilberg, now Lillian Chason (the petitioner herein), was duly appointed as the committee of his person and estate, and duly qualified as such.

After such appointment and in June, 1928, the committee executed a mortgage in the sum of $9,000 upon a piece of real estate owned by the incompetent, in which he and his family resided, located on Ninth avenue in Mt. Vernon, N. Y.

This mortgage was foreclosed in February, 1934, and was bid in by the then mortgagee. It is evident that the mortgagee did not desire to retain title to this property, so that negotiations were instituted which resulted in the former mortgagee reconveying title to the then incompetent in his individual name and his executing a new bond and mortgage to the Home Owners Loan Corporation in the amount of $7,999.80 in June, 1934.

Upon the closing of this loan the attorney representing the Home Owners Loan Corporation raised the objection as to the outstanding order appointing the committee of the incompetent, and insisted that this objection be cleared.

Thereupon an *ex parte* application was made to one of the justices of this court, who granted the *ex parte* order which is here under attack.

An examination of such order discloses that it was granted upon (1) the petition of the incompetent, (2) the affidavit of the closing attorney for the Home Owners Loan Corporation in the then pending loan, (3) an affidavit by a Mt. Vernon physician, and (4) the certificate of discharge from the Hudson River State Hospital to the custody of his son as " improved " on June 15, 1933.

No notice of such application was given to the committee or any one else.

No hearing was had, or testimony taken, as to the mental condition of the incompetent. The only proof submitted on this subject was the affidavit of the physician to the effect that he had known the incompetent for several years, who had been under his care and treatment; that he had examined the incompetent on that day and found him improved; and that " it is deponent's belief that the said Nathan Gilberg is competent, and now able to manage for himself the affairs of his estate and person." This physician did not claim to be a psychiatrist or even an examiner in lunacy.

It is undisputed that at that time the committee was temporarily residing in Omaha, Neb., where she had been for nearly a year, and the theory of the petition seemed to be that she had abandoned her trust. But, in any event, this was a strictly *ex parte* application, without notice to any one whatsoever, and the *ex parte* order was granted.

Thereupon the Home Owners Loan Corporation loan was closed, and in September, 1935, this mortgage was foreclosed and the property bid in by the Home Owners Loan Corporation for $500, resulting in a deficiency judgment of approximately $8,500, for a mortgage which originally was only $7,999.80.

It appears that the incompetent and his wife own another piece of property in Mt. Vernon, in which his interest may be wiped out by the enforcement of such deficiency judgment.

The committee seeks to vacate the order of discharge upon two grounds, to wit:

(1) That the court had no power to discharge without notice; and

(2) That the proof of restoration of competency was wholly insufficient in law to justify such order.

The justice who made such order having been elevated to the Appellate Division, the discharged committee has adopted the proper procedure, by moving at Special Term to vacate the order which, having been made *ex parte*, was not subject to review by appeal. (*Moore* v. *American Molasses Co.*, 179 App. Div. 505; *Stewart* v. *Stewart*, 127 id. 672; *Matter of Bean* v. *Stoddard*, 207 id. 276.)

It is conceded by all the parties that absolutely no notice of any kind was given to the committee, or her surety, or any one else, of the application for the removal of the committee.

Section 1380 of the Civil Practice Act provides: " Where the judge has reason to believe that sufficient cause exists for the removal of the committee, the judge, in his discretion, may appoint a fit person special guardian of the incompetent person with respect to whom the committee was appointed, for the purpose of filing a petition in his behalf for the removal of the committee and prosecuting the necessary proceedings for that purpose."

This can only be construed to mean that a committee cannot be removed excepting by a duly instituted special proceeding. No such proceedure was had in the instant matter.

In construing the foregoing section, Judge WILLARD BARTLETT, writing for a unanimous Court of Appeals, said, in *Matter of Andrews* (192 N. Y. 514, at pp. 523, 524):

" Here we have, as it seems to me, by the plainest implication a legislative declaration that even where the propriety of the removal of the committee of a lunatic is suggested by facts coming to the knowledge of the judge, either officially or otherwise, *a special proceeding for such removal should be instituted before the committee is actually removed.* Such a course of procedure clearly contemplates an application to the court in behalf of the incompetent person, *of which notice shall be given to those interested in his person or property.* Only in this way can the court become fully advised of the reasons which may exist for and against the proposed removal and also as to the selection of a successor, if a successor must be appointed. The requirement that his removal shall thus be effected *only by the institution of a regular proceeding in court* is in nowise detrimental to the interests of the incompetent; for the power of suspension may always be exercised in the meantime if it appears that the interests of the incompetent are threatened with immediate injury. Irrespective, however, of any question as to the reasonableness of the requirement it seems to be quite clear that such procedure is contemplated by the language of the statute, and if that view is correct it is decisive of the present appeal. \* \* \*

" I have not been able to find any reported case in this State in which a committee has been removed by the chancellor or a judge acting *sua sponte* and without notice. Great confusion and conflict might arise if such orders could properly be made by the ninety-seven Supreme Court justices in this State, each one of whom may exercise the powers of a chancellor. \* \* \*

" *In my opinion the removal of a committee without notice was not sanctioned by the established practice of the courts as it existed*

*prior to the enactment of the provision which I have quoted from section 2342 of the Code of Civil Procedure* (now section 1380 of the Civil Practice Act); *and that enactment now constitutes a statutory rule of procedure in such cases, the observance of which is essential to the regularity of an order of removal.* This in no manner impairs the jurisdiction of the court, but merely regulates its exercise in such a way as will be most conducive to the orderly administration of justice. *The parties entitled to notice of a proceeding for the appointment of a committee should have notice of the proceeding for his removal contemplated by section 2342;* and while the latter proceeding is pending no other proceeding for the removal of the committee can properly be entertained at least without notice to the parties to the proceeding first instituted."

The second point relied upon by the petitioner herein is that the proof of the restoration of the competency of the incompetent was wholly insufficient in law to justify the order of removal.

As hereinbefore indicated, the sole proof before the court making the *ex parte* order was the certificate by the superintendent of the Hudson State River Hospital to the effect that the incompetent was discharged on June 15, 1933, to the custody of his son; " condition on discharge, improved," plus an affidavit from a local physician residing in Mt. Vernon, who did not claim to be a psychiatrist or even an examiner in lunacy, to the effect that such physician had known the incompetent for several years, had had him under his care and treatment, and that he had examined the incompetent on the day of his affidavit and found him improved, and that " it is deponent's belief that the said Nathan Gilberg is competent, and now able to manage for himself the affairs of his estate and person."

In *Matter of Ireland* (246 App. Div. 113, 114), in discussing such a situation, a duly appointed committee was discharged upon papers very similar to those presented in the case at bar, to wit: A petition by the incompetent, the affidavit of two physicians, and a certificate from the Hudson River State Hospital to the effect that the incompetent was discharged " without parole." In reversing the order of removal, the Appellate Division said:

" The procedure regulating the appointment and discharge of the committee of an incompetent is statutory and is found in articles 81 and 81-A of the Civil Practice Act. Where an application is made for a supersedeas of the commission the court is called upon to exercise its discretion as to the procedure to be followed. * * * That discretion should be exercised with care, caution and patience so as to protect the alleged incompetent person against the wrongful deprivation of his liberty or his property. * * *

" *To warrant a discharge of the committee there must be clear and satisfactory proof that the incompetent has been restored to mental soundness and the burden of proof is on him to establish that fact.*

" The mere discharge from a hospital where the ward has been committed is not sufficient to show such restoration of the mental capacity required as to warrant the discharge of the guardianship. One may not be technically insane but nevertheless incompetent to care for and manage one's property. The incompetent person is the ward of the court and it is its duty to protect him and his property.

" In the instant case the learned justice at Special Term took no testimony but based his order on the petition, the superintendent's letter and the affidavits of the two physicians. Singularly enough these affidavits are couched in identical language and simply state that each deponent is a physician and an examiner in lunacy and that the deponent ' on the 12th day of June, 1935, examined one John Ireland and said Ireland is, in deponent's opinion, fully competent and in a proper mental condition to handle his own property and affairs.'

" There is nothing in the affidavits to indicate upon what the opinions of the doctors were founded. The affidavits fail to detail when the examinations were made and the nature or extent thereof. Neither physician states that he has any knowledge of the history of the respondent.

" It seems to us that these affidavits wholly fail to detail in a circumstantial manner the grounds upon which the conclusions of the affiants are based. The value which should be attached to the opinion of these physicians can only be determined upon an examination which would disclose the reasons for the opinion.

" The responsibility for the appointment or the discharge of a committee of an incompetent person rests not upon the opinion of physicians but upon the sound judgment and discretion of the Supreme Court."

In the case at bar there is even less evidence of the ability of the incompetent to manage his own affairs. The fact that the incompetent, since the removal of the committee, has been again returned to the Hudson River State Hospital, where he still remains, surely indicates that the order in question may have been based upon insufficient proof of the competency of the incompetent at the time when the order of discharge was entered.

Accordingly, the motion herein is granted and the order discharging the committee is vacated. Settle order on two days' notice to all the attorneys appearing upon this application.